The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. At the time of the alleged injury by accident, the parties were subject to and bound by the provisions of the Workers' Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff.
3. Travelers Insurance Company was the carrier on the risk.
4. Plaintiff's average weekly wage was $133.20.
5. The date of the alleged injury was March 28, 1994.
In addition, the parties stipulated into evidence thirty pages of medical records and reports.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. As of March 1994 plaintiff had been employed approximately seven years by defendant day care center. She would arrive at work after breakfast had been served to the children and would clean the dishes and the kitchen from that meal. A catering service provided the food for lunch which plaintiff would then serve to the children. After lunch, she washed the dishes from that meal. However, there were no pots and pans to wash, only the dishes, utensils, and serving bowls. The dishwasher at the center could accommodate dishes, but it required several loads.
2. On March 28, 1994 plaintiff needed to remove a rack of dishes which was heavier than usual from the dishwasher after lunch. As she was rushing to finish her duties in order to stay on schedule, she opened the door to the dishwasher and reached down for the rack and steam came up into her face causing her to start coughing. Although she continued coughing, she lifted the tray of dishes out of the dishwasher. While lifting the rack, she also had to hold the dishwasher door open because the latch had broken. By the time she placed the rack on the counter, she was experiencing pain in the right side of her neck. She mentioned the problem that day to Nellie Ramseu, the center's leader, but did not report it to her supervisor until a subsequent date.
3. The next day plaintiff reported for work and advised Ms. Ramseu that she was continuing to have problems but that she would try to work through March 30 when an inspection of the facility was planned. She was hoping that the symptoms would resolve, but her pain began to radiate down her arm. Consequently, on March 31, 1994, she went to her doctor's office where she saw the physician's assistant. He prescribed medication initially and on April 5 sent her to physical therapy because she was not improving. However, she remained symptomatic so he subsequently referred her to Dr. Furr, an orthopedic surgeon.
4. Dr. Furr began treating plaintiff on April 26, 1994 for what he diagnosed as rotator cuff impingement syndrome and he initially recommended conservative measures. However, on July 14, 1994 he performed surgery on her right shoulder. He did not find a rotator cuff tear in the operation but found small labral changes and an inflamed bursa. Following the surgery, plaintiff did not regain her range of motion as Dr. Furr expected so he ordered more aggressive physical therapy. However, in September 1994 she developed another health problem, a pulmonary embolism, for which she was hospitalized, so the treatment for her shoulder was temporarily suspended. After her discharge from the hospital, her shoulder condition remained essentially the same. Dr. Furr subsequently referred her to Dr. D'Alessandro for a second opinion. Dr. D'Alessandro agreed that she had some adhesive capsulitis but only recommended further physical therapy due to the fact that she was taking Coumadin, a blood-thinning medication.
5. Dr. Furr wanted to pursue further treatment options involving injections and manipulation of the shoulder joint, but he could not recommend them as long as plaintiff was taking Coumadin. He contacted her family doctor to advise of the problem, but Dr. Ferrington had not discontinued Coumadin as of the time Dr. Furr's deposition was taken. Consequently, the more aggressive treatment had not yet been prescribed. As of that time her pain symptoms had improved but her range of motion had not. Dr. Furr was hopeful that she would be able to undergo the more aggressive treatment in the future.
6. On March 28, 1994, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant employer. The fact that she had a coughing spell as she lifted and carried a full rack of dishes constituted an unusual occurrence which interrupted her regular work routine. As a result of the accident, she sustained an acute strain and sprain and an aggravation of the rotator cuff overuse syndrome of her right shoulder.
7. As a result of this injury by accident, plaintiff was unable to work on March 31, 1994, on April 7th and 8th, from April 23 through 26, and from June 3, 1994 through the date of the hearing on February 23, 1995. As of the date of the hearing, she continued to be unable to perform her regular duties with defendant-employer which required lifting heavy pans of food, boxes of canned goods, dishes, and the dishwasher rack. Her employer did not offer lighter work to her which would have been suitable to her capacity.
8. As of the date of the hearing, plaintiff had not reached maximum medical improvement with respect to this injury. Consequently, no finding is made regarding the extent of permanent partial disability she may have sustained as a result of the injury by accident.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On March 28, 1994 plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer in that she sustained a specific traumatic incident of the work assigned. N.C.G.S. 97-2 (6).
2. Plaintiff is entitled to compensation at the rate of $88.80 per week for 39 weeks for the temporary total disability she sustained as a result of this injury by accident beginning June 3, 1994, and continuing thereafter for as long as she remains so disabled. N.C.G.S. 97-29.
3. Plaintiff is entitled to have defendants provide all medical compensation arising from this injury by accident. N.C.G.S. 97-2 (19); N.C.G.S. 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay compensation to plaintiff for temporary total disability at the rate of $88.80 per week from June 3, 1994 and continuing thereafter for as long as she remains disabled. That portion of this compensation which has accrued shall be paid in a lump sum. This award is subject to the attorney's fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident.
3. An attorney's fee in the amount of 25% of the compensation awarded is hereby approved for plaintiff's counsel, which fee shall be deducted from the aforesaid award and paid directly to counsel.
4. Defendants shall pay the costs of this appeal.
 S/ _____________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ _______________________ THOMAS J. BOLCH COMMISSIONER
S/ ________________________ BERNADINE S. BALLANCE COMMISSIONER